**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

CISCO SYSTEMS, INC. and CISCO
TECHNOLOGY, INC.,

                            Plaintiffs,

           -against-

SHENZHEN TIANHENG NETWORKS CO;
GEZHI PHOTONICS TECHNOLOGY CO., LTD.;
SHENZHEN SOURCELIGHT TECHNOLOGY
CO.; HU JIANGBING; LI PAN; DONG
DAOSHUN; WANG WEI; and DARIOCOM,

                           Defendants.

------------------------------------------------------------ x

19 Civ. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

**FILED *EX PARTE* AND UNDER SEAL
PURSUANT TO 15 U.S.C. § 1116**

Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco"), by and through their attorneys, Patterson Belknap Webb & Tyler LLP, for their complaint against Defendants Shenzhen Tianheng Networks, Gezhi Photonics Technology Co., Ltd., Shenzhen Sourcelight Technology Co., Hu Jiangbing, Li Pan, Dong Daoshun, Wang Wei, and Dariocom (collectively, "Defendants"), allege as follows:

<u>**THE NATURE OF THE ACTION**</u>

1.      This is an anti-counterfeiting action against counterfeiters of CISCO® branded pluggable transceiver modules ("Cisco transceivers"). Transceivers are electronic devices that use fiber optic technology to send (or transmit) and receive data. Cisco transceivers are utilized in countless public and private computer networks, including those operated by the U.S. government, U.S. military, and hospitals, whose networks rely on Cisco transceivers for critical and life-essential applications. These entities, and the people they serve, are being exposed to defective, dangerous counterfeits

11343967

of unknown origin.

2.      The availability of counterfeit Cisco transceivers is by the defendants is extensive.  The defendant counterfeiters have carefully and faithfully reproduced the transceivers and their labeling, which includes unauthorized depictions of Cisco's well-known and federally-registered trademarks.  Only with a close and meticulous inspection can the counterfeit product be distinguished from the authentic. That inspection has revealed that the counterfeit transceivers are dramatically different from authentic Cisco product.  They are manufactured using substandard components, with inaccurate labeling, and under unknown conditions.

3.      To eradicate these dangerous and defective counterfeits from the market, Cisco now brings this anti-counterfeiting action for injunctive and monetary relief for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false descriptions, false designations of origin, and false advertising in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and Section 349 of the New York General Business Law; trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and Section 360-1 of the New York General Business Law; and common-law unjust enrichment and unfair competition.

## THE PARTIES

4.      Plaintiff Cisco Systems, Inc. is a California corporation, with its principal place of business at 170 West Tasman Drive, San Jose, California 95134.

5.      Plaintiff Cisco Technology, Inc. is a California corporation, with its principal place of business at 170 West Tasman Drive, San Jose, California 95134.

- 2 -

11343967

Cisco Technology, Inc. is the owner of the Cisco trademarks described below, which are used by Cisco Systems, Inc. in marketing Cisco-branded transceivers.

6.    Defendant Shenzhen Tianheng Networks ("Shenzhen Tianheng") is, upon information and belief, a corporation organized under the laws of China, with a principal place of business at 9A-1-C01, Tianxiang Building, Chegongmiao, Futian District, Shenzhen, Guangdong, China.

7.    Defendant Shenzhen Gezhi Photonics Technology Co., Ltd. ("Gezhi Photonics") is , upon information and belief, a corporation organized under the laws of China, with a principal place of business at 13F, Weidonglong Tech Building, Meilong Road, Longhua District, Shenzhen, Guangdong, China.

8.    Defendant Shenzhen Sourcelight Technology Co. ("Shenzhen Sourcelight") is, upon information and belief, a corporation organized under the laws of China, with a principal place of business at 6/F, Longsheng Industrial Zone 7 Bldg., Longhua District, Shenzhen, Guangdong, China.

9.    Defendant Hu Jiangbing is, upon information and belief, a principal of Shenzhen Sourcelight, exercises control over Shenzhen Sourcelight, and is a moving, conscious, active force behind Shenzhen Sourcelight's unlawful conduct.

10.    Defendant Li Pan is, upon information and belief, a principal of Shenzhen Sourcelight, exercises control over Shenzhen Sourcelight, and is a moving, conscious, active force behind Shenzhen Sourcelight's unlawful conduct.

11.    Defendant Dong Daoshun is, upon information and belief, a principal of Shenzhen Sourcelight, exercises control over Shenzhen Sourcelight, and is a

- 3 -

moving, conscious, active force behind Shenzhen Sourcelight's unlawful conduct.

12.    Defendant Wang Wei is, upon information and belief, a principal of Shenzhen Sourcelight, exercises control over Shenzhen Sourcelight, and is a moving, conscious, active force behind Shenzhen Sourcelight's unlawful conduct.

13.    Defendant Dariocom is, upon information and belief, a corporation organized under the laws of China, with a principal place of business at No. 3 Bldg, Fuzhong Ind Xiashiwei Road, Fuyong Town, Baoan District, Shenzhen, Guangdong, China.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338, and 1367; and general principles of ancillary and pendent jurisdiction.

15.    The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

16.    The Court has personal jurisdiction over each of the Defendants pursuant to Federal Rule of Civil Procedure 4(k) and/or N.Y. C.P.L.R. §§ 301 and 302. The Court also has personal jurisdiction over each of the Defendants because the tortious acts described in this complaint (which occurred in New York, among other places) were conducted and/or directed by each of the Defendants.

17.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District, and each of the Defendants is subject to personal jurisdiction in

11343967

this District.

## THE FACTS

**Cisco's Transceivers**

18.      Cisco was founded in 1984 and is the worldwide leader in developing, implementing, and providing the technologies behind networking, communications, and information technology products and services.  Cisco develops and provides a broad range of networking products and services that enable seamless communication among individuals, businesses, public institutions, government agencies, and service providers.  Specifically, the thousands of engineers who work at Cisco develop and provide networking and communications hardware, software, and services that utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities and campuses, and around the world.  The transceivers that Cisco markets and sells are central to these systems.  Cisco transceivers are known in the market as reliable, high-quality products.  Cisco ships over 10 million transceivers per year.

19.      As a leading provider of networking gear, Cisco and its transceivers are critically responsible for the quality of the networks in the United States and around the world.  Performance of a network is dependent on the transceiver.  Cisco transceivers provide the central connection.

20.      A transceiver encodes and decodes data by converting an electrical signal into light pulses and then sends the data through a fiber optic cable, where it is received at the other end and converted back into an electrical signal.  Cisco markets and sells a wide range of transceivers that vary in size, price, and functionality.  Every Cisco

transceiver, however, is designed to meet and exceed industry standards for quality, reliability, safety, and performance.

21.     Cisco products often contain components that are manufactured by third-party vendors.  Cisco transceivers are manufactured by one of three authorized original equipment manufacturers ("OEMs"):  Methode Electronics, Inc.; FINISAR Corporation; and Foxconn Interconnect Technology, Ltd.

22.     Cisco requires its OEMs to follow strict quality and control standards.  These standards govern everything including the design of the product, the selection of components, the conditions of the production facility, and ongoing reliability testing, audits, and recordkeeping.

23.     Cisco requires all OEMs to adhere to high quality manufacturing and distribution standards.  These standards ensure that the product meets feature specifications.  Throughout the product's lifecycle, Cisco monitors each OEM's compliance with its quality and control standards.

24.     Before a single product is shipped to a customer, Cisco conducts reliability demonstration testing to expose any undiscovered defects that may be induced by the manufacturing process.  After the product is approved for customer shipment, Cisco performs ongoing reliability testing on subsequent productions.

25.     Cisco also subjects all manufacturing facilities to stringent audits. Each OEM is required to maintain detailed production records for each serialized product and logs of product movement throughout the supply chain.  This gives Cisco the ability to support customers via serial number traceability.  In addition, each OEM participates

in quarterly business reviews that comprehensively examine the manufacturer's practices and procedures and identify areas for improvement.

26.     Each authentic Cisco transceiver is assigned a unique top label that is controlled by Cisco, printed by a security company under contract with Cisco, and sent directly to the OEM.  The top label incorporates a multitude of overt and covert security features.  Each top label has the famous CISCO® Mark embossed on the label.  Each top label also contains a product identification ("PID") number, a Cisco part number, a product label serial number, and a security label serial number.  The product label serial number is a unique 11-digit alphanumeric figure with a 1-D barcode.  The security label serial number is a unique 9-digit alphanumeric figure with a 2-D barcode.  Importantly, the PID, Cisco part, product label, and security label serial numbers must match up.  If any of these numbers do not match up—for instance, if the product label serial number is not associated with the PID and Cisco part numbers—then the product is a counterfeit.

27.     Every Cisco transceiver also contains an electrically erasable programmable read-only memory ("EEPROM") which stores a small amount of Cisco-specific data.  The EEPROM content of an authentic Cisco transceiver identifies Cisco as the vendor, sets forth the transceiver product numbers (including the Cisco part number and product label serial number), and includes a copyrighted and patented algorithm.  This algorithm, which is referred to a "handshake," is used to confirm that a valid Cisco transceiver has been deployed into the host device, for instance, a Cisco switch or Cisco router.  The absence of any of this data on an EEPROM is evidence of a counterfeit, as is the presence of any incorrect information.

**Trademarks Used on Cisco Transceivers**

28.     Cisco is the owner of the following famous and registered trade and service marks (together, the "CISCO® Marks") that appear on the authentic Cisco products:

- "CISCO" (Reg. Nos. 1,542,339; 2,498,746; 3,709,076; 3,978,294; 3,985,844; 3,990,147; 4,005,670)

-  (Reg. Nos. 3,759,451)

29.     Cisco has used, and is currently using, the CISCO® Marks continuously and exclusively in commerce and in connection with its sale of Cisco networking hardware, including transceivers.

30.     Cisco has invested heavily in the CISCO® brand for over thirty-four years.  Cisco prominently displays its CISCO® Marks on its products and in advertising and promotional materials for its products.  As a result of extensive promotion and widespread sales, the CISCO® Marks are widely recognized and have become well known to the public and synonymous with reliable, high-quality networking hardware products. Cisco has spent, and continues to spend, billions of dollars marketing and promoting in interstate commerce these products in connection with the CISCO® Marks.

31.     Cisco has engaged and continues to engage in activities designed to promote Cisco products and the business and goodwill associated with its trademarks,

and to expand the use and reputation of its trademarks, logos, and intellectual property throughout the United States and world.  Due to Cisco's extensive use of and investment into the CISCO® Marks over three decades and the high quality of Cisco's products, the CISCO® brand has built up a tremendous amount of consumer goodwill.  The CISCO® Marks symbolize business goodwill of Cisco and are invaluable assets to Cisco.

**Counterfeit Cisco Transceivers Pose Significant Risks**

32.     Cisco cannot vouch for the safety or efficacy of the counterfeits.  If any of Cisco's standards are not followed and any necessary steps in sourcing, manufacturing, and distributing the transceivers are compromised or not followed, the product may not function properly and may be unsafe to operate.

33.     The manufacturers of the counterfeit transceivers are not subjected to any of Cisco's rigorous standards, and in light of the substantially lower prices the counterfeiters charge and the differences between the authentic and counterfeit products, it is a certainty that they do not follow any such standards concerning design, testing, manufacturing, and distribution.  Investigations by Chinese law enforcement into other counterfeiting manufacturing operations have confirmed this, revealing operations that are extremely rudimentary and do not meet any of Cisco's manufacturing, safety, or cleanliness standards.

34.     If non-approved components are used in transceivers, there is a risk the product will not function properly and will not function in combination with authentic Cisco products and components being used in the network.  Moreover, while Cisco products are manufactured and updated with the latest software, counterfeit

products that use pirated versions of earlier and outdated software may not operate correctly, leaving users exposed to security and intrusion vulnerabilities that were detected and fixed in more current versions of the software.  Because this substandard operation may not be apparent to the consumer, the consumer may believe its network is protected, when in reality inferior software is leaving dangerous gaps in the security.

35.     Transceiver quality and reliability is extremely important, and is the reason Cisco invests heavily in the quality and reliability of its products.  Data integrity is critical to not only businesses, but to government, military, financial, healthcare, and corporate networks, all of which need to reliably transmit and receive data.  Counterfeit transceivers put these consumers' data integrity in jeopardy.

36.     Electromagnetic interference is another critical issue.  A poorly designed transceiver can emit excessive electromagnetic energy that can interfere with adjacent equipment.  This can be detrimental in any environment where sensitive electronic equipment is present, including in a military command, hospital, or data center.

**Defendants' Counterfeiting Harms Consumers and Cisco**

37.     Defendants trade off the goodwill associated with the CISCO® Marks and deceive consumers into believing that the counterfeit Cisco products were manufactured or authorized by Cisco, resulting in irreparable harm to Cisco and consumers.

38.     None of the Defendants in this matter has ever been authorized to reproduce or use the CISCO® Marks in connection with the sale of counterfeit products. The products Defendants distribute, offer for sale, and sell under Cisco's CISCO® brand

are counterfeit products that are confusingly similar to Cisco's own authentic product; bear counterfeit and confusingly similar imitations of the CISCO® Marks; and are not manufactured by Cisco or any party associated or affiliated with, or authorized, licensed, or approved of by Cisco.

39.     Defendants' conduct harms Cisco because counterfeit Cisco products fail or degrade, creating the false impression that Cisco products are unreliable. This improperly tarnishes Cisco's reputation and causes Cisco to suffer lost sales and future business opportunities.  As a result, Cisco suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.

40.     The sale of counterfeit Cisco products also harms the OEMs that manufacture the transceivers.  The financial health of these OEMS is essential to ensure a steady stream of high-quality components and products that can be relied upon by Cisco and its customers.  The presence of counterfeits likewise causes OEMs to lose sales and business opportunities, which can put their financial health at risk.

41.     Most importantly, Defendants' conduct harms consumers who are deceived and receive low-quality counterfeit products instead of high-quality genuine Cisco products.

42.     Cisco's products, including transceivers, are purchased and used by the U.S. government, hospitals, utilities, transportation services, the education industry, communication service providers, financial services, professional services, and other industries.  These industries use Cisco's products in critical and oftentimes life-essential applications.  Governmental and other infrastructures are built on, and rely

upon, Cisco products to maintain the security of data storage and ensure the integrity of data transfer and communications. Many critical government functions rely upon the performance of high-quality Cisco products, and are put at risk by low-quality counterfeits.

43. The U.S. military and its members critically depend on authentic Cisco products. In a federal criminal action brought by the U.S. government against a counterfeiter of Cisco networking hardware, *United States v. Ehab Ashoor*, No. H-09-CR-307 (S.D. Tex.), U.S. Marines Staff Sergeant Lee Chieffalo testified before a jury concerning the U.S. military's extensive use of and reliance on Cisco products to transfer and receive data. As explained by Staff Sergeant Chieffalo, "[t]he Marine Corps' network infrastructure is solely Cisco equipment," and "the equipment that Cisco uses has proprietary protocols and software on them that operates only with other Cisco gear." That Cisco gear is "built to specifications that [the Marine Corps] use[s] for reliability and environmental hardness." The Marine Corps utilizes the Cisco-based classified network for all of its battle operations, including sharing intelligence, convoy operations, troop movements, air operations, call for fire, and medevacs. The risk, according to Staff Sergeant Chieffalo, of using substandard counterfeit products could not be higher: "Marines could die."

44. Understanding the grave risks posed by counterfeit Cisco products, the U.S. government, from 2005 to 2010, conducted a coordinated law enforcement operation concerning counterfeit Cisco networking products, called "Operation Network Raider." This effort was led by the Department of Justice, with investigative support by

11343967

the FBI, Homeland Security, and various Office of Inspector General offices representing

the Department of State, Department of Defense, and other government entities.  As

stated in a press release issued by the Department of Justice on May 6, 2010, "Operation

Network Raider, a domestic and international enforcement initiative targeting the illegal

distribution of counterfeit network hardware manufactured in China, has resulted in 30

felony convictions and more than 700 seizures of counterfeit Cisco network hardware and

labels with an estimated retail value of more than $143 million."  Emphasizing the public

security aspect of counterfeit networking products, John Morton, Assistant Secretary of

Homeland Security, explained: "These cases involve greedy businessmen hocking

counterfeit and substandard hardware to any buyer—whether it could affect the health

and safety of others in a hospital setting or the security of our troops on the battlefield….

They pose a triple threat to our nation by stealing from our economy, threatening U.S.

jobs and potentially putting the safety of our citizens at risk."  Numerous other criminal

investigations and cases involving counterfeit Cisco products have been commenced

since 2010.

**Discovery and Testing of Counterfeit Cisco Transceivers**

45.    In conjunction with these law enforcement actions and criminal

investigations, Cisco devotes significant resources towards uncovering and shutting down

the manufacture and distribution of counterfeit Cisco products.  Cisco recently discovered

suspect "Cisco" transceivers being offered for sale in the United States by entities located

in China.

46.    As part of its investigation into the counterfeit Cisco transceivers

being offered online by China-based entities, including Defendants, Cisco arranged for a private investigator to purchase purported Cisco transceivers from Defendants.  For each purchase of a suspect Cisco transceiver from the Defendants, the product was delivered by the Defendant to an address in Brooklyn, which is located in the Eastern District of New York.

47.     Cisco maintains three lab facilities dedicated to testing potentially counterfeit products around the world.  The lab facilities are located in The Netherlands, Hong Kong, and San Jose, California—with this third facility being the largest. Generally, products are analyzed by the lab that is geographically closest to the procurement location.  These test labs are access controlled—that is, they only allow select members of the Cisco Brand Protection team to enter—to ensure that a proper chain of custody is maintained and that there is no tampering with products before, during, or after examination.

48.     Cisco's product authentication test labs are equipped with specialized tools to help Cisco's Brand Protection engineering personnel evaluate whether products are genuine, or whether they are counterfeit products bearing the CISCO® Marks without authorization.

49.     Under a stringent chain of custody, each suspect product was then shipped to Cisco's San Jose test lab.  A product engineer at Cisco evaluated each suspected counterfeit Cisco transceiver.  Based on numerous differences between the suspect counterfeit product and an authentic Cisco transceiver, the engineer concluded that every one of the suspect transceivers was in fact counterfeit.

11343967

50.      To confirm its engineer's analysis, Cisco took photographs of the suspect transceivers and shared the photos with the OEM, if any, that was identified in the counterfeit top label.  Each OEM identified a set of potentially counterfeit attributes, which were evaluated by the OEM's test engineer.  Based on this evaluation of every transceiver purchased from Defendants, the OEM's test engineer also determined that the suspect transceiver was counterfeit.  Each OEM detailed its findings in an Executive Summary Report ("ESR").  Cisco's engineer subsequently reviewed each OEM's findings, confirmed those findings, and adopted them as part of his comprehensive analysis of each counterfeit transceiver.

51.      All of the products purchased from Defendants share various distinctive characteristics that distinguish them from genuine products manufactured for Cisco.  Those distinctive characteristics do not and could not appear on authentic Cisco transceivers.  Cisco's product engineer concluded that all of the suspect transceivers sold by the Defendants are counterfeit.

52.      **Shenzhen Tianheng**.  On July 15, 2019, a private investigator purchased six (6) transceivers from Shenzhen Tianheng at the following web address: https://thnetwork.en.alibaba.com/.  Shenzhen Tianheng advertised and sold these transceivers as Cisco-brand transceivers.  Shenzhen Tianheng sent these suspect transceivers to Cisco's investigator in Brooklyn, New York, who then sent the transceivers to Cisco's test lab in San Jose, California, for examination.

53.      Specifically, the investigator purchased the following transceivers from Shenzhen Tianheng using the following web addresses:

| Model | Product ID | Product Label Serial Number | Security Label Serial Number | Web Address |
|---|---|---|---|---|
| GLC-SX-MMD | 10-2626-01 | FNS21040YHS | WA9MJ1795 | https://thnetwork.en.alibaba.com/product/60556277631-219350195/CiscoSFPTransceiver125G850nm550mGLCSXMMD.html |
| GLC-TE | 30-1475-01 | AVC19442363 | W25NX4254 | https://thnetwork.en.alibaba.com/product/60817810608-219350195/Cisco125GSFPTransceiverGLCTE.html |
| SFP-10G-LR | 10-2457-02 | FNS19231A83 | WAYG24492 | https://thnetwork.en.alibaba.com/product/60817187936-219350195/Cisco_SFP_10G_Transceiver_SFP_10G_LR_S.html |
| GLC-LH-SMD | 10-2525-01 | FNS17480SZB | A9JX2001 | https://thnetwork.en.alibaba.com/product/60817053571-219350195/Cisco125GSFPTransceiverGLCLHSMD.html |
| GLC-T | 30-1410-03 | AGM145121WC | W25LH3170 | https://thnetwork.en.alibaba.com/product/60556863250-219350195/CiscoSFPTransceiver125G1000BASETGLCT.html |
| SFP-10G-SR | 10-2415-03 | FNS1702214TN | WBN1H3867 | https://thnetwork.en.alibaba.com/product/60531125534-219350195/CiscoSFP10GBASESRTransceiverSFP10GSR.html |

54.     On August 26, 2019, Cisco's product engineer examined all six suspect transceivers received from Shenzhen Tianheng.  Each suspect transceiver had a top label that bore the Cisco logo: CISCO .  Furthermore, the EEPROM for each transceiver identified "CISCO" as the vendor.  Cisco's product engineer determined that each transceiver sold by Shenzhen Tianheng is not a genuine Cisco product, but instead is counterfeit.  Cisco's product engineer set forth the basis for his determination in a Preliminary Analysis & Assessment for Case 101380.

55.     Cisco's product engineer subsequently provided photographs of the suspect transceivers to the OEM identified in the product label serial number on the counterfeit top label:  photographs of the products bearing the IDs 10-2626-01, 10-2457-02, 10-2525-01, and 10-2415-03 were provided to FINISAR; and photographs of the products bearing the IDs 30-1475-01 and 30-1410-03 were provided to FOIT.  The photographs of each product were reviewed and analyzed by the OEM's test engineer, who then prepared an ESR detailing his findings.  FINISAR and FOIT confirmed Cisco's assessment, determining that all six suspect transceivers were counterfeit.  Cisco's product engineer reviewed these ESRs and adopted the OEMs' findings as part of his final assessment.

56.     The suspect transceivers sold by Shenzhen Tianheng are clearly counterfeit in light of the many differences between them and authentic Cisco transceivers.  These differences include, but are not limited to:

a.      For genuine Cisco transceivers, the product label serial number and security label serial number are unique numbers that match up. The product label serial number and security label serial number on the Shenzhen Tianheng transceivers do not match.

b.      Genuine Cisco transceivers are manufactured according to specific design and build standards, and use approved, genuine components.  The counterfeit transceivers do not match Cisco's OEM build and design standards and use unapproved, non-genuine components.

c.      The EEPROM of genuine Cisco transceivers identifies various product attributes, including the product part number, the vendor, the product serial label number, and a date code.  The product attributes contained within the EEPROM for each counterfeit transceiver are incorrect and do not accurately reflect the attributes of a genuine Cisco transceiver.

- 17 -

57. **Dariocom**. On July 15, 2019, a private investigator purchased two (2) transceivers from Amazon seller Dariocom. Dariocom advertised and sold these transceivers as Cisco-brand transceivers. Dariocom sent these suspect transceivers to Cisco's investigator in Brooklyn, New York, who sent them to Cisco's test lab in San Jose, California, for examination.

58. Specifically, the investigator purchased the following transceivers from Dariocom using the following addresses:

| Model | Product ID | Product Label Serial Number | Security Label Serial Number | Web Address |
|---|---|---|---|---|
| GLC-LH-SMD | 10-2625-01 | FNS17480SY3 | WA9JV1999 | https://www.amazon.com/gp/offer-listing/B00M8PLT14 |
| GLC-T | 30-1410-03 | AGM145121VS | W25HS2643 | https://www.amazon.com/gp/offer-listing/B0000C3GWT |

59. On August 26, 2019, Cisco's product engineer examined the suspect transceivers received from Dariocom. Each suspect transceiver had a top label that bore the Cisco logo: **CISCO**. Furthermore, the EEPROM for each transceiver identified "CISCO" as the vendor. Cisco's product engineer determined that each transceiver sold by Dariocom is not a genuine Cisco product, but instead is counterfeit. Cisco's product engineer set forth the basis for his determination in a Preliminary Analysis & Assessment for Case 101386.

60. Cisco's product engineer subsequently provided photographs of the transceivers received from Dariocom to the OEM identified in the product label serial

- 18 -

number on the counterfeit top label:  photographs of the product bearing the ID 10-2625-01 were provided to FINISAR; and photographs of the product bearing the ID 30-1410-03 were provided to FOIT.  The photographs of each product were reviewed and analyzed by the OEM's test engineer, who then prepared an ESR detailing his findings.  FINISAR and FOIT confirmed his assessment, determining that the two Dariocom transceivers were counterfeit.  Cisco's product engineer reviewed these ESRs and adopted the OEMs' findings as part of his final assessment.

61.    The suspect transceivers sold by Dariocom are clearly counterfeit in light of the many differences between them and authentic Cisco transceivers.  These differences include, but are not limited to:

a.    For genuine Cisco transceivers, the product label serial number and security label serial number are unique numbers that match up.  The product label serial number and security label serial number on the Dariocom transceivers do not match.

b.    Genuine Cisco transceivers are manufactured according to specific design and build standards, and use approved, genuine components.  The counterfeit transceivers do not match Cisco's OEM build and design standards and use unapproved, non-genuine components.

c.    The EEPROM of genuine Cisco transceivers identifies various product attributes, including the product part number, the vendor, the product serial label number, and a date code.  The product attributes contained within the EEPROM for each counterfeit transceiver are incorrect and do not accurately reflect the attributes of a genuine Cisco transceiver.

62.    **Gezhi Photonics**.  On August 23, 2019, a private investigator purchased two (2) transceivers from Gezhi Photonics at the following web address: https://gezhiphotonics.en.alibaba.com/.  Gezhi Photonics advertised and sold these

transceivers as Cisco-brand transceivers.  Gezhi Photonics sent these suspect transceivers

to Cisco's investigator in Brooklyn, New York, who sent them to Cisco's test lab in San

Jose, California, for examination.

      63.    Specifically, the investigator purchased the following transceivers

from Gezhi Photonics using the following web addresses:

| Model | Product ID | Product Label Serial Number | Security Label Serial Number | Web Address |
|---|---|---|---|---|
| SFP-10G-LR-X | N/A | GS1909090001 | N/A | https://gezhiphotonics.en.alibaba.com/product/60419472585-806982708/CiscoSFP101001000baseTCopperTransceiverGLCT.html |
| SFP-10G-LR-X | N/A | GS1909090002 | N/A | https://gezhiphotonics.en.alibaba.com/product/60419472585-806982708/CiscoSFP101001000baseTCopperTransceiverGLCT.html |

      64.    On September 30, 2019, Cisco's product engineer examined the

suspect transceivers received from Gezhi Photonics.  The EEPROM for each transceiver

identified "CISCO" as the vendor.  Cisco's product engineer determined that each

transceiver sold by Gezhi Photonics is not a genuine Cisco product, but instead is

counterfeit.  Cisco's product engineer set forth the basis for his determination in an ESR

for Case 101384.

      65.    The top label of the suspect transceivers sold by Gezhi Photonics

did not indicate an OEM.  Accordingly, Cisco did not provide photographs of the suspect

transceivers to an OEM.  Therefore, Cisco's product engineer's preliminary assessment

and final assessment are one and the same.  Because authentic product always contains a

top label that indicates an OEM, the lack of such information on the top label of the

transceivers sold by Gezhi Photonics is itself evidence that the product is counterfeit.

66.     The suspect transceivers sold by Gezhi Photonics are clearly

counterfeit in light of the many difference between them and authentic Cisco

transceivers.  These differences include, but are not limited to:

a.     The top label of each Gezhi Photnoics transceiver is not consistent with authentic Cisco transceiver top labels.  The product label serial number on each Gezhi Photonics transceiver does not meet the Cisco-approved product label serial number format or nomenclature.

b.     The attributes contained within the EEPROM for each Gezhi Photonics transceiver are incorrect and do not accurately reflect the attributes of a genuine Cisco transceiver.

67.     The counterfeit transceivers sold by Gezhi Photonics are

programmed to deceive the consumer into thinking they are genuine Cisco transceivers.

For example, the EEPROM for each Gezhi Photonics transceiver contains the Cisco

copyrighted and patented "handshake" algorithm in order to emulate a genuine Cisco

transceiver (and thereby deceive the end user) when connected to a Cisco host device.

68.     **Shenzhen Sourcelight**.  On September 11, 2019, a private

investigator purchased two (2) transceivers from Shenzhen Sourcelight at the following

web address:  https://sourcelighten.en.alibaba.com/.  Shenzhen Sourcelight advertised and

sold these transceivers as Cisco-brand transceivers.  Shenzhen Sourcelight sent these

suspect transceivers to Cisco's investigator in Brooklyn, New York, who sent them to

Cisco's test lab in San Jose, California, for examination.

69.     Specifically, the investigator purchased the following transceivers

11343967

from Shenzhen Sourcelight using the following web addresses:

| Model | Product ID | Product Label Serial Number | Security Label Serial Number | Web Address |
|---|---|---|---|---|
| SFP-10G-LR | N/A | 1SLU1909110001 | N/A | https://sourcelightcn.en.alibaba.com/product/60643189026-806494291/Cisco_SFP_10G_LR_X_for_10GBASE_LR_1310nm_10Km_DDM_extended_temperat ure_range.html |
| SFP-10G-LR | N/A | 1SLU1909110002 | N/A | https://sourcelightcn.en.alibaba.com/product/60643189026-806494291/Cisco_SFP_10G_LR_X_for_10GBASE_LR_1310nm_10Km_DDM_extended_temperat ure_range.html |

70.     On September 30, 2019, Cisco's product engineer examined the suspect transceivers received from Shenzhen Sourcelight. The EEPROM for each transceiver identified "CISCO" as the vendor. Cisco's product engineer determined that each transceiver sold by Shenzhen Sourcelight is not a genuine Cisco product, but instead is counterfeit. Cisco's product engineer set forth the basis for his determination in an ESR for Case 101385.

71.     The top label of the suspect transceivers sold by Shenzhen Sourcelight did not indicate an OEM. Accordingly, Cisco did not provide photographs of the suspect transceivers to an OEM. Therefore, Cisco's product engineer's preliminary assessment and final assessment are one and the same. Because authentic product always contains a top label indicating an OEM, the lack of such information on the top label of the transceivers sold by Gezhi Photonics is itself evidence that the product is counterfeit.

72.     The suspect transceivers sold by Shenzhen Sourcelight are clearly

- 22 -

counterfeit in light of the many difference between them and authentic Cisco

transceivers.  These differences include, but are not limited to:

a.      The top label of each Shenzhen Sourcelight transceiver is not
consistent with authentic Cisco transceiver top labels.  The product
label serial number on each Shenzhen Sourcelight transceiver does
not meet the Cisco-approved product label serial number format or
nomenclature.

b.      The attributes contained within the EEPROM for each Shenzhen
Sourcelight transceiver are incorrect and do not accurately reflect
the attributes of a genuine Cisco transceiver.

73.     Like those sold by Gezhi Photonics, the suspect transceivers sold

by Shenzhen Sourcelight are programmed to deceive the consumer into thinking that they

are genuine Cisco transceivers.  The EEPROM for each suspect transceiver contains the

Cisco copyrighted and patented "handshake" algorithm attributes in order to emulate a

genuine Cisco transceiver (and deceive the end user).

## FIRST CLAIM FOR RELIEF
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1)(A))

74.     Cisco realleges and incorporates by reference paragraphs 1 through

73 of this Complaint as if fully set forth herein.

75.     In violation of 15 U.S.C. § 1114(1)(a), Defendants, independently

and in conspiracy with one another, used in commerce, without Cisco's consent, a

reproduction, counterfeit, copy, or colorable imitation of the CISCO® Marks in

connection with the sale, offering for sale, distribution, or advertising of counterfeit Cisco

products or in connection with which such use that is likely to cause confusion, cause

mistake, or deceive.

76.     Defendants' actions constitute willful infringement of Cisco's

11343967

exclusive rights in the CISCO® Marks.

77.     As a direct and proximate result of Defendants' conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants are restrained from further infringement of the CISCO® Marks, Cisco will continue to be irreparably harmed.

78.     Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

79.     As a direct and proximate result of Defendants' conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**FEDERAL TRADEMARK INFRINGEMENT(15 U.S.C. § 1114(1)(B))**

80.     Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

81.     In violation of 15 U.S.C. § 1114(1)(b), Defendants, independently and in conspiracy with one another, reproduced, counterfeited, copied, or colorably imitated the registered CISCO® Marks belonging to Cisco and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution, or advertising of counterfeit Cisco products or in connection with such use that is likely to cause confusion, cause mistake, or deceive.

82.     Defendants' actions constitute willful infringement of Cisco's

- 24 -

exclusive rights in the CISCO® Marks.

83.     As a direct and proximate result of Defendants' conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants are restrained from further infringement of the CISCO® Marks, Cisco will continue to be irreparably harmed.

84.     Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

85.     As a direct and proximate result of Defendants' conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
### FALSE DESCRIPTION AND DESIGNATION OF ORIGIN IN COMMERCE

86.     Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

87.     In violation of 15 U.S.C. § 1125(a)(1)(A), Defendants, independently and in conspiracy with one another, in connection with the counterfeit Cisco products, used in commerce a slogan, trade dress, word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection, or association with Cisco.

88.     Defendants' actions constitute willful infringement of Cisco's exclusive rights in the CISCO® Marks.

11343967

89.     As a direct and proximate® result of Defendants' conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants are restrained from further infringement of the CISCO® Marks, Cisco will continue to be irreparably harmed.

90.     Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

91.     As a direct and proximate result of Defendants' conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF
### <u>FEDERAL FALSE ADVERTISING</u>

92.     Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

93.     In violation of 15 U.S.C. § 1125(a)(1)(B), Defendants, independently and in conspiracy with one another, in connection with the sale of the counterfeit Cisco products, used a slogan, trade dress, word, term, name, symbol, or device or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities of the counterfeit Cisco products.

94.     On information and belief, Defendants advertised, marketed, and promoted the counterfeit Cisco products to the public, and/or to specific segments of the public, using the CISCO® Marks, as well as other intellectual property belonging to

- 26 -

Cisco.

95.     Defendants' actions constitute willful infringement of Cisco's exclusive rights in the CISCO® Marks.

96.     As a direct and proximate result of Defendants' conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants' conduct is restrained, Cisco will continue to be irreparably harmed.

97.     Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

98.     As a direct and proximate result of Defendants' conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

**FIFTH CLAIM FOR RELIEF**
**FEDERAL DILUTION OF MARK**

99.     Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

100.     The CISCO® Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

101.     Defendants are selling and/or have sold counterfeit products bearing the CISCO® Marks after such trademarks and trade dress became famous.

102.     By selling these counterfeit products, Defendants, independently and in conspiracy with one another, have diluted and are diluting the distinctive quality of a mark or trade name owned by Cisco in violation of 15 U.S.C. § 1125(c).

- 27 -

103.    Defendants' actions constitute willful infringement of Cisco's exclusive rights in the CISCO® Marks.

104.    As a direct and proximate result of Defendants' conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants' conduct is restrained, Cisco will continue to be irreparably harmed.

105.    Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

106.    As a direct and proximate result of Defendants' conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF
## NEW YORK DILUTION OF MARK AND INJURY TO BUSINESS REPUTATION

107.    Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

108.    The CISCO® Marks are distinctive within the meaning of New York General Business Law § 360-1.

109.    By selling counterfeit products bearing the CISCO® Marks, Defendants, independently and in conspiracy with one another, have injured and are continuing to injure Cisco's business reputation and/or have diluted and are continuing to dilute the distinctive quality of a mark or trade name owned by Cisco, in violation of New York General Business Law § 360-1.

110.    Defendants' actions constitute willful infringement of Cisco's

- 28 -

exclusive rights in the CISCO® Marks.

111.    As a direct and proximate result of Defendants' conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants' conduct is restrained, Cisco will continue to be irreparably harmed.

112.    Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

113.    As a direct and proximate result of Defendants' conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF
## NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES

114.    Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

115.    In violation of New York General Business Law § 349, Defendants, independently and in conspiracy with one another, are selling, offering for sale, and/or distributing low-quality counterfeit products unlawfully bearing the CISCO® Marks.

116.    Defendants' conduct is deceptive to ordinary members of the public and harmful to the public interest.

117.    As a direct and proximate result of Defendants' deceptive conduct, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants are restrained from further infringement of the CISCO®

Marks, Cisco will continue to be irreparably harmed.

118.     Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

119.     As a direct and proximate result of Defendants' deceptive conduct, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

**EIGHTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**

120.     Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

121.     In violation of the common law of the State of New York and elsewhere, Defendants, independently and in conspiracy with one another, have unfairly competed with Cisco by selling the counterfeit products.

122.     As a direct and proximate result of Defendants' unfair competition, Cisco has suffered irreparable harm to the valuable CISCO® Marks and its reputation in the industry.  Unless Defendants' conduct is restrained, Cisco will continue to be irreparably harmed.

123.     Cisco has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

124.     As a direct and proximate result of Defendants' unfair competition, Cisco has suffered damages to the valuable CISCO® Marks and other damages in an amount to be proved at trial.

11343967

**NINTH CLAIM FOR RELIEF**
**COMMON LAW UNJUST ENRICHMENT**

125.    Cisco realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

126.    By selling the counterfeit products bearing Cisco's valuable trademarks independently and in conspiracy with one another, Defendants have been unjustly enriched at Cisco's expense in violation of the common law of New York and elsewhere.

127.    Under principles of equity, Cisco is entitled to restitution and/or disgorgement of Defendants' ill-gotten gains.

**PRAYER FOR RELIEF**

WHEREFORE, Cisco demands judgment against Defendants as follows:

A.    temporarily restraining, and preliminarily and permanently enjoining, each and every one of the Defendants and their subsidiaries, parents, affiliates, agents, servants, employees, members, directors, and officers, and those persons in active concert or participation with them:

(i)    from using any of the CISCO® Marks, whether genuine or counterfeit, or any marks confusingly similar thereto in connection with the manufacture, sale, offer for sale, distribution, advertisement, or any other use of transceivers;

(ii)    from using any logo, trade name, or trademark confusingly similar to any of the CISCO® Marks which may be

- 31 -

11343967

calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendants or of others are sponsored by, authorized by, or in any way associated with Cisco;

(iii)   from infringing any of the CISCO® Marks;

(iv)   from otherwise unfairly competing with Cisco in the manufacture, sale, offering for sale, distribution, advertisement, or any other use of Cisco products;

(v)   from falsely representing themselves as being connected with Cisco, sponsored by, and/or associated with Cisco or engaging in any act which is likely to cause the trade, retailers, and/or members of the purchasing public to believe that Defendants, or any of them, are associated with Cisco;

(vi)   from using any reproduction, counterfeit, copy, or colorable imitation of any of the CISCO® Marks in connection with the publicity, promotion, sale, or advertising of transceivers;

(vii)   from affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to

11343967

falsely describe or represent such goods as being Cisco products and from offering such goods in commerce;

(viii)   from diluting any of the CISCO® Marks;

(ix)   from destroying any records documenting the manufacture, sale, offer for sale, distribution, advertisement, or receipt of any product purporting to be Cisco products; and

(x)   from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above; and

B.   ordering that, within fifteen days after the entry and service of a temporary, preliminary, or permanent injunction, Defendants serve and file a written report under oath setting forth in detail the manner and form in which they have complied with the injunction; and

C.   ordering that all infringing material be turned over, seized, impounded, and/or destroyed; and

D.   awarding to Cisco punitive damages from each Defendant in an amount to be ascertained at trial, but in no event less than $25 million; and

E.   awarding to Cisco statutory or actual damages in an amount to be ascertained at trial, and costs and attorneys' fees; and

F.      awarding to Cisco an accounting, and an award of: (i) all ill-gotten profits from Defendants' manufacture, sale, and/or distribution of the counterfeit Cisco products; (ii) Cisco's lost profits; and (iii) Cisco's remedial costs; and

G.      awarding to Cisco pre-judgment and post-judgment interest; and

H.      awarding such other and further relief to Cisco as may be just, proper, and equitable.

11343967

DATED: November 22, 2019
New York, New York

By: _____

Geoffrey Potter
gpotter@pbwt.com

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Plaintiffs Cisco Systems, Inc. and
Cisco Technology, Inc.*

11343967