**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

January 22, 2020

Geoffrey Potter
Partner
(212) 336-2050
gpotter@pbwt.com

By Electronic Mail

Judge LaShann DeArcy Hall
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: **Cisco Systems, Inc. et al. v. Shenzhen Tianheng Networks et al., 19-cv-6609 (LDH) (LB) (E.D.N.Y.)**

Dear Judge DeArcy Hall:

  As you know, we represent plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco"). We write in accordance with Your Honor's instructions at yesterday's conference concerning Cisco's renewed motion for alternative service.

  As set forth in Cisco's prior briefing and the attached declaration, shortly after the entry of a Temporary Restraining Order in this action, Cisco sent via FedEx copies of the papers in this action to all known addresses for the Defendants. Second Declaration of R. James Madigan III ("Second Madigan Decl.") ¶ 6. As the Court is aware, Cisco was not ordered or otherwise required to send the papers via FedEx. Rather, Cisco did so of its own accord as part of its campaign to use all available means – including email, website publication, and contacting eCommerce websites including Amazon and Alibaba – to give prompt notice of this action to Defendants and to encourage their participation in this litigation. *See* Cisco's January 14, 2020 letter-brief and accompanying declaration.

  The papers were sent via FedEx to every purported physical address for the Defendants that was known to Cisco. Second Madigan Decl. ¶ 6. This included the addresses that appeared on the invoices for the counterfeits each Defendant sold to Cisco's investigators in this District, as well as the return addresses that appeared on the physical shipments themselves. *Id.* ¶¶ 2-5. In total, Cisco sent 16 FedEx packages; with a single exception, each Defendant had utilized, or purported to utilize, two or three different physical addresses, and so those Defendants were each sent multiple packages. *Id.* At yesterday's conference, the Court questioned whether those FedEx shipments indicated that Defendants' known addresses were valid, and asked whether FedEx had indicated the deliveries were successful. As promised at the hearing, Cisco has checked the FedEx records, and can now confirm that **none of the 16 attempted FedEx deliveries to the corporate Defendants' known addresses were successful**. *Id.* ¶ 7. Confirmation of each of the failed deliveries are attached as Exhibits 1-16 to the enclosed Second Madigan Declaration.

11592666

Again, the addresses of these 16 failed FedEx shipments represent every physical address that the Defendants provided in the normal course of business in selling and shipping counterfeit Cisco transceivers into this District. The fact that FedEx was not able to make a delivery to the corporate defendants at **any** of these addresses is strong evidence that none of the Defendants has provided a legitimate business address, and that attempted service at these addresses through the Hague Convention would be ineffective and futile. As noted in our earlier submissions to the Court, internet-based counterfeiters have no incentive to provide their actual physical location, and the use of multiple assumed or false physical addresses is a simple and common tactic used to avoid detection and to avoid service of process. At least one New York district court has recently found that the inability to deliver papers via FedEx to the business address provided by a foreign defendant is sufficient grounds to order alternative e-mail service under Rule 4(f)(3). *See Ultra Records, LLC v. Chee Yee Teoh*, 2017 U.S. Dist. Lexis 58715 (S.D.N.Y. Apr. 18, 2017).

The facts here, as set forth in the Second Madigan Declaration and in our prior filings concerning alternative service, fall squarely within the holdings of the caselaw we have discussed with the Court, including *Elsevier Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374 (S.D.N.Y. 2018), which this Court cited in its November 28, 2019 Order. In *Elsevier*, the plaintiffs did not know the defendants' identities or physical addresses when it initiated the action; it named several John Doe online sellers of counterfeit textbooks, whose identities they subsequently learned through third-party discovery from the defendants' online marketplace vendors, specifically eBay and Paypal. *Id.* at 376-77. In support of their motion for alternative service, the plaintiffs in *Elsevier* submitted a brief attorney declaration stating, in a single paragraph and without any detail or attachments, that the third-party discovery had revealed multiple physical addresses for each defendant, and that "some of the address information appears to be incomplete." *Id.*; *see also* Second Madigan Decl. ¶ 9 & Ex. 17 ¶ 8 (copy of the declaration submitted by plaintiffs' counsel in *Elsevier*). The *Elsevier* court found that declaration to be persuasive and sufficient evidence that each of the five China-based defendants had taken steps to conceal their true physical locations, and held that there was therefore no need to attempt service under the Hague Convention. 287 F. Supp. 3d at 378-79.

Cisco has provided significantly more evidence than the plaintiff in *Elsevier*. For each Defendant, the record now contains specific documentary evidence concerning the Defendants' actual use of physical addresses, as provided to their customers and shipping agents, in connection with the actual sale of counterfeits into this District. That evidence shows not only that the Defendants used multiple addresses in connection with those actual counterfeit sales, but also that all of those addresses are invalid. FedEx's inability to deliver a single packet of documents addressed to any of the Defendants at any of their supposed business addresses provides strong confirmation that, as in *Elsevier*, "defendants have operated in such a way as to stymie any effort to determine their true addresses." *Id.* at 379. This effort by Defendants to conceal their true physical locations by itself justifies the use of alternative email service under Rule 4(f)(3). *Id.* Moreover, and in any event, the Hague Convention simply does not and cannot apply where the defendants' true physical addresses are not known. *Id.* at 379-380; *Microsoft Corp. v. Doe*, 2012 U.S. Dist. Lexis 162122 at *4-8 (E.D.N.Y. Nov. 8, 2012) (holding Hague Convention does not apply where defendants' true addresses are unknown, and collecting cases confirming email service appropriate for foreign internet vendors).

As the Court correctly noted at yesterday's hearing, the four Individual Defendants – Hu Jiangbing, Li Pan, Dong Daoshun, and Wang Wei – are all principals of defendant Shenzhen Sourcelight Technology Co. ("Shenzhen Sourcelight"). Those individuals were identified after a diligent search of Chinese public records, which did not reveal any of their personal addresses. Second Madigan Decl. ¶ 3; *see also* November 20, 2019 Declaration of Jozef White ¶ 6 & Ex. 2. Cisco attempted to deliver to each of the Individual Defendants at Shenzhen Sourcelight's known business addresses, and each attempted FedEx delivery failed. Second Madigan Decl. ¶¶ 6-7. Because the business addresses are invalid, and the Individual Defendants' personal addresses are not known and were not discovered during a diligent public records search, or through expedited discovery, service on the Individual Defendants is also impossible under the Hague Convention, and the Court should order that they be served via email at Shenzhen Sourcelight's email address as well. *See In re GLG Life Tech. Corp.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (authorizing alternative service on an individual through service on his corporation because "obviously a corporation will inform its own Chairman and Chief Executive Officer of a lawsuit pending against him").

Finally, email service here will satisfy due process, and will in fact be the most effective means of service. The Defendants regularly transact business in English using these email addresses, and in fact communicated with Cisco's investigators and sold counterfeits into this District using these email addresses. Second Madigan Decl. ¶ 10; *see, e.g.*, *Microsoft*, 2012 U.S. Dist. Lexis 162122, at *4-8. In fact, two of the Defendants, Gezhi Photonics Technology Co., Ltd. and Dariocom, have affirmatively responded to communications about this litigation sent by Cisco's counsel to their email addresses. Second Madigan Decl. ¶¶ 11-13.

Therefore, for the reasons stated above and in Cisco's previous filings, Cisco respectfully requests that the Court issue an order allowing service via email pursuant to Fed. R. Civ. P. 4(f)(3). Cisco would, of course, effect service promptly after the entry of such an order.

Cisco further respectfully requests that the order provide that unless a Defendant submits an opposition within three business days to the Order to Show Cause, the Court will decide the preliminary injunction motion on the already-submitted papers. *See A. Nelson & Co. v. Ellon USA*, 1996 U.S. Dist. Lexis 7479, at *5-7 (S.D.N.Y. May 30, 1996) (holding that preliminary injunction may issue "on the papers," without an evidentiary hearing or oral argument, where there are insufficient factual disputes to warrant a hearing, or where defendants have waived their right to demand a hearing). Alternatively, Cisco requests that the Court reset the preliminary injunction hearing for a date as soon as the Court's schedule allows, but no fewer than three days after the entry of the requested alternative service order.

                   Respectfully submitted,

                   */s/ Geoffrey Potter*

                   Geoffrey Potter

Enclosures